COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-415-CV
 
SAADALLAH JABRI AND                                                        
   APPELLANTS
AIDA JABRI
V.
JAMAL QADDURA                                                                       
APPELLEE
AND
 
NO. 2-02-416-CV
ROLA QADDURA                                                                       
APPELLANT
V.
JAMAL QADDURA AND                                                        
   APPELLEES
OSAMA QADDURA
------------
FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY
------------
OPINION
------------
These consolidated appeals involve the
denial of Appellants' motions to stay litigation and compel arbitration under
the Texas General Arbitration Act. We reverse and render judgment in favor of
Appellants.
Background
The
parties to this litigation:
There are five parties to these two
consolidated appeals: a husband and wife, the wife's parents, and the husband's
brother.
Rola Qaddura and Jamal Qaddura were
married on September 3, 1993. Previously, on August 28, 1993, they had signed an
"Islamic Society of Arlington Islamic Marriage Certificate" which
reflects that the "dowry for the bride" was: "One-half of the
value of the house located at 2206 Gladstone. This is in addition to $40,000
Fourty [sic] Thousand U.S. Dollars the payment of which is deferred."
On October 19, 1999, Rola filed for
divorce. She sought sole managing conservatorship of the parties' two children,
child support, division of the parties' estate, and enforcement of the terms of
the Islamic Marriage Certificate. Rola subsequently sued Jamal's brother, Osama
Qaddura, as a third-party defendant, alleging he was engaged in a conspiracy
with Jamal whereby Jamal was wrongfully transferring community assets to Osama,
including a house on Vesta Via Court.
Jamal filed a counterclaim seeking sole
managing conservatorship and child support. He sought a declaration that the
Islamic Marriage Certificate was unenforceable because it was induced by Rola by
fraud. He also alleged a separate cause of action against Rola for
"defamation and false light," in which he sought $250,000 actual
damages and $1,000,000 exemplary damages.
Osama filed a counterclaim seeking a
declaratory judgment that he is the sole owner of the house on Vesta Via Court
(with no right of reimbursement by Rola or Jamal) and of a specific bank
account.
On January 18, 2002, Jamal filed a
separate suit seeking a protective order against Rola's parents (the children's
grandparents), Saadallah Jabri and Aida Jabri, alleging the children had been
injured while in their care.
The
partial summary judgment:
On April 27, 2001, the trial court granted
Jamal's motion for partial summary judgment in the divorce case. The court
found: the "purported Islamic Dowry agreement" is not an enforceable
agreement under Texas law, nor is it a valid or qualified premarital agreement
under the Texas Family Code; the house on Gladstone Drive is the separate
property of Jamal; the house on Vesta Via Court is owned by Osama; and two
certificates of deposit (for $102,348 and $5,398) are currently non-existent and
neither party has a claim of reimbursement for the monies. Accordingly, the
trial court's partial summary judgment ordered that Rola take nothing on these
claims.
The
Arbitration Agreement:
On September 25, 2002, all five parties
signed an "Arbitration Agreement." This document recites, in full,
that the parties:

 after consultation with their respective
 attorneys, agree to submit all claims and disputes among them to arbitration
 by the TEXAS ISLAMIC COURT, 888 s.
 Greenville Ave., suite 188, Richardson, Texas, as follows:
 
 A.  Cause No. 322-291577-99,
 styled "In the Matter of the Marriage of Rola Jabri Qadurra and Jamal
 Qaddura and In the Interest of Noor Qaddura and Farah Qaddura Minor
 children", pending in the 322nd Judicial District Court of
 Tarrant County, Texas.
 B. Cause No. 76-184050-00, Styled
 "Jamal Qaddura Versus Saadallah Jabri", pending in the 67th
 Judicial District Court of Tarrant County, Texas.[(1)]
 C. Cause No. NO.
 322-328238-02 (FORMERLY 325-328238-02), styled "Jamal Qaddura vs.
 Saadallah Jabri and Aida Jabri" pending in the 322 Judicial District
 Court of Tarrant County, Texas.
 
 1.The Parties agree to arbitrate all
 existing issues among them in the above mentioned Cause Numbers in the
 appropriate District Court, which includes the Divorce Case, the child custody
 of the [sic] Noor Qaddura and Farah Qaddura, the determination of each party's
 responsibilities and duties according to the Islamic rules of law by Texas
 Islamic Court.
 2.All parties agree to sign the Texas
 Islamic Court required legal forms, and each party pays his required fees.
 3.The panel of arbitrators of Texas
 Islamic Court will be formed according to the rules and regulations of Texas
 Islamic Court. However, the parties agree and suggest the following names for
 the panel:
 .Mujahid Bakhash, the
 Imam of the Islamic Association of Tarrant County, Fort Worth, Texas.
 .Main El-quda, the Imam of the Islamic Society of Arlington,
 Arlington, Texas.
 .Abdel Salam Abu-Nar, the Imam of Dar Assalam Islamic Center,
 Arlington, Texas
 4.Each Party will submit all of his
 documents, exhibits, and evidence to Texas Islamic Court.
 5.The parties agree that the Ruling of
 the Texas Islamic Court in the above mentioned Cause Numbers is Binding, and
 Final, and no party will take any appeal or future legal action of any matter
 afterwards.
 6.Each party will cause the above cause
 numbers to be abated pending the decision by the arbitrators, and submit the
 decision of the arbitrators for adoption by the respective courts. The parties
 will ask the courts to refer the cases for arbitration to Texas Islamic court
 within "Seven Days" from the establishment of the Texas Islamic
 Court panel of Arbitrators. The assignment must include ALL cases, including
 those filed against or on behalf of other family members related to the
 parties. Each party will notify the other party, Texas Islamic Court, and
 their respective attorneys, in writing of the assignment of all the above
 Cause Numbers from the above appropriate District Court to Texas Islamic
 Court.
     

All five parties signed this Arbitration
Agreement, as did the attorneys for Jamal, Rola, and Saadallah. The document was
witnessed by four other individuals whose signatures are on the document. At the
hearing on Appellants' motion to compel arbitration, Appellants' attorney
explained the circumstances regarding the parties' decision to submit to
arbitration:

 The parties got together and approached
 my client, Rola Qaddura, with the proposal that they submit this to
 arbitration. The parties got together over the weekend. They all signed it and
 then directed their attorneys to take whatever legal action was necessary to
 enforce the arbitration.
      

On September 30 and October 3, 2002, the
same five parties, and the same two attorneys, signed a document entitled
"Stipulations and Agreements Covering Arbitration." This document
reiterates much of the binding language of the Arbitration Agreement and
specifies that the parties agree to be bound by the rules of arbitration of the
Texas Islamic Court.
A dispute arose among the parties over the
scope of the issues that were subject to arbitration under the Arbitration
Agreement, and on October 7, 2002 Rola filed a motion in the divorce suit
seeking to stay litigation and compel arbitration.(2) 
Saadallah and Aida filed an identical motion in the protective order suit.
Appellees did not file written objections or responses to Appellants' motions.
The
hearing in the trial court:
On November 14, 2002, the trial court held
a hearing on Appellants' motion to compel arbitration. The court heard argument
of counsel, and Appellants established that the signatures on the Arbitration
Agreement and the stipulations document were authentic.(3)
The attorney representing Rola, Saddallah, and Aida and the attorney
representing Jamal told the court their clients could not agree on what issues
were covered by the Arbitration Agreement.
Appellants argued it covered every issue
raised in the pending lawsuits, including those issues upon which the trial
court had previously entered interlocutory rulings (specifically, the matters
covered by the partial summary judgment, which ruling Appellants emphasized was
interlocutory and subject to being changed by the court until final judgment is
entered).(4) Appellants told the court that since
there was a dispute about the scope of the Arbitration Agreement, pursuant to
the Texas General Arbitration Act it was the court's duty to decide what the
Arbitration Agreement covered.
Appellee Jamal argued in favor of
arbitration but claimed the Arbitration Agreement only covered those issues that
had not been previously determined by the court (that is, the Arbitration
Agreement excluded the subject matter of the prior partial summary judgment).
Appellee Osama's attorney stated he revoked his client's signature and consent
to the Arbitration Agreement.(5)
The trial court determined the parties
disagreed regarding the scope of the Arbitration Agreement and it therefore was
not valid or binding. The court denied Appellants' motions to stay litigation
and compel arbitration. The trial court did not make findings of fact or
conclusions of law.(6) Rola, Saadallah, and Aida
have appealed the court's orders refusing to compel arbitration and denying a
stay of the pending proceedings.(7)
The Texas General
Arbitration Act
The Texas General Arbitration Act
provides:

 § 171.001. Arbitration
 Agreements Valid
 (a) A written agreement to arbitrate is
 valid and enforceable if the agreement is to arbitrate a controversy that:
 
 (1) exists at the time of the
 agreement; or
 (2) arises between the parties after
 the date of the agreement.
 
 (b) A party may revoke the agreement
 only on a ground that exists at law or in equity for the revocation of a
 contract.

Tex. Civ. Prac. & Rem. Code Ann. §
171.001. A court shall order the parties to arbitrate on application of a party
showing an agreement to arbitrate, and the opposing party's refusal to
arbitrate. Id. § 171.021(a). If a party opposing the application
denies the existence of the agreement, the court shall summarily determine that
issue. Id. § 171.021(b). The court shall order the arbitration if it
finds for the party that made the application. Id. An order compelling
arbitration must include a stay of any proceeding subject to section 171.025. Id.
§§ 171.021(b), 171.025.
A party seeking to compel arbitration must
establish the existence of an arbitration agreement, and show that the claims
raised fall within the scope of the agreement. In re Oakwood Mobile Homes,
Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding). Once the party
establishes a claim within the arbitration agreement, the trial court must
compel arbitration and stay its own proceedings. Id.; Ikon Office
Solutions, Inc. v. Eifert, 2 S.W.3d 688, 693 (Tex. App.--Houston [14th
Dist.] 1999, no pet.). The trial court may summarily decide whether to compel
arbitration on the basis of affidavits, pleadings, discovery, and stipulations
of the parties. Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269 (Tex.
1992) (orig. proceeding). The court must conduct an evidentiary hearing,
however, when there are disputed material facts. See id.
In the instant case, the parties did not
deny the existence of the written Arbitration Agreement, they differed over
which claims fell within the scope of the Agreement. Arbitration is strongly
favored under federal and state law. Cantella & Co. v. Goodwin, 924
S.W.2d 943, 944 (Tex. 1996) (orig. proceeding); Prudential Sec. Inc. v.
Marshall, 909 S.W.2d 896, 898 (Tex. 1995) (orig. proceeding). Any doubts
regarding the scope of an arbitration agreement should be resolved in favor of
arbitration. Cantella, 924 S.W.2d at 944; Merrill Lynch, Pierce,
Fenner & Smith v. Eddings, 838 S.W.2d 874, 880 (Tex. App.--Waco 1992,
writ denied). Every reasonable presumption must be decided in favor of
arbitration. See Ikon, 2 S.W.3d at 693.
Standard of Review on
Appeal
On appeal, we must determine whether the
trial court's ruling as to the scope of the Arbitration Agreement was an abuse
of discretion. See Am. Employers' Ins. Co. v. Aiken, 942 S.W.2d 156,
159 (Tex. App.--Fort Worth 1997, no writ). We must decide whether the trial
court's ruling was arbitrary and unreasonable, that is, made without reference
to any guiding rules or principles. See Worford v. Stamper, 801 S.W.2d
108, 109 (Tex. 1990); S.W. Health Plan, Inc. v. Sparkman, 921 S.W.2d
355, 357 (Tex. App.--Fort Worth 1996, no writ). The trial court's legal
conclusions are reviewed by us de novo. See Ikon, 2
S.W.3d at 693.
Whether the Arbitration Agreement imposes
a duty to arbitrate the claims in a particular dispute is a matter of contract
interpretation. See Am. Employers' Ins., 942 S.W.2d at 159; BDO
Seidman v. Miller, 949 S.W.2d 858, 860 (Tex. App.--Austin 1997, writ dism'd
w.o.j.) (op. on reh'g). Whether a contract is ambiguous is a question of law. Columbia
Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex.
1996). If there is no ambiguity, the construction of the written instrument is a
question of law for the court. City of Pinehurst v. Spooner Addition Water
Co., 432 S.W.2d 515, 518 (Tex. 1968). Our primary goal in construing a
written contract is to ascertain and give effect to the intent of the parties as
expressed in the instrument. See Balandran v. Safeco Ins. Co., 972
S.W.2d 738, 741 (Tex. 1998); Nat'l Union Fire Ins. Co. v. CBI Indus.,
907 S.W.2d 517, 520 (Tex. 1995). If a written contract is so worded that it can
be given a certain or definite legal meaning or interpretation, then it is not
ambiguous and the court will construe the contract as a matter of law. Nat'l
Union, 907 S.W.2d at 520; Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983).
An ambiguity does not arise simply because
parties advance differing interpretations of the terms of a contract. Columbia
Gas, 940 S.W.2d at 589; Forbau v. Aetna Life Ins. Co., 876 S.W.2d
132, 134 (Tex. 1994); Sun Oil Co. v. Madeley, 626 S.W.2d 726, 727 (Tex.
1981). For an ambiguity to exist, the language of the contract must remain
uncertain or subject to two or more reasonable interpretations after applying
the pertinent rules of construction. Columbia Gas, 940 S.W.2d at 589.
In construing the Arbitration Agreement,
we are to examine all parts of the document and the circumstances surrounding
the formulation of the contract. See id.; Nat'l Union, 907
S.W.2d at 520; Forbau, 876 S.W.2d at 133. We must consider all of the
provisions with reference to the entire Arbitration Agreement; no single
provision will be controlling. See Coker, 650 S.W.2d at 393; Cook
Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d 124, 132 (Tex.
App.--Houston [14th Dist.] 2000, pet. dism'd). Only where a contract
is determined to be ambiguous after application of the rules of construction may
the courts consider parol evidence of the parties' interpretations. Nat'l
Union, 907 S.W.2d at 520; Sun Oil Co., 626 S.W.2d at 732. Where
there is a broad arbitration clause, arbitration of a particular grievance
should not be denied unless it can be said with positive assurance that the
arbitration clause is not susceptible of an interpretation that covers the
asserted dispute. Kline v. O'Quinn, 874 S.W.2d 776, 782 (Tex.
App.--Houston [14th Dist.] 1994, writ denied), cert. denied,
515 U.S. 1142 (1995).
Discussion
In three issues Appellants contend: the
Arbitration Agreement is valid and binding and encompasses any dispute or matter
upon which the trial court could subsequently rule at trial, including the
claims made the basis of the prior interlocutory partial summary judgment
(issues one and three); and the trial court erred in holding the Arbitration
Agreement was invalid for the lack of signature of Osama's trial attorney (issue
two).
We summarily overrule issue two because
there is no indication in the record that the trial court's ruling was based
upon the lack of signature of Osama's attorney on the Arbitration Agreement.
In response to issues one and three,
Appellee Jamal asserts the trial court properly denied arbitration because there
was no "meeting of the minds" inasmuch as the parties could not agree
on the scope of the Agreement and Appellants offered no evidence regarding the
Agreement.(8)
As mentioned earlier, the trial court
determined the parties' signatures on the Arbitration Agreement were authentic.
Appellants were not required to offer additional evidence in order for the trial
court to make a ruling regarding the validity of the Agreement. See Jack B.
Anglin Co., 842 S.W.2d at 269. Applying contract construction principles,
we must review the entire Arbitration Agreement to determine whether it is so
worded that it can be given a certain or definite legal meaning or
interpretation. See Coker, 650 S.W.2d at 393. An examination
of the document reveals:

 "[the parties] agree to submit all
 claims and disputes among them to arbitration. . . ." [Emphasis
 added.]


 "The Parties agree to arbitrate all
 existing issues among them in the above mentioned Cause Numbers in the
 appropriate District Court, which includes the Divorce Case, the child
 custody of the [sic] Noor Qaddura and Farah Qaddura, the determination of
 each party's responsibilities and duties according to the Islamic rules of
 law. . . ." [Emphasis added.]


 The Arbitration Agreement lists
 with specificity the exact cause numbers, case styles, and names of the
 trial courts in which the three causes that are subject to the Agreement are
 pending.
 The document states that the parties
 agree the ruling of the arbitration panel is "Binding, and Final, and
 no party will take any appeal or future legal action of any matter
 afterwards."


 The Arbitration Agreement concludes
 with the recitation that each party will cause the above cause numbers to be
 abated pending the decision of the arbitrators, and will ask the courts to
 refer the cases for arbitration within seven days from the establishment of
 the panel of arbitrators. Further, "[t]he assignment must include ALL
 cases, including those filed against or on behalf of other family members
 related to the parties."
 

The Arbitration Agreement does not contain
any language purporting to except the applicability of the Agreement to certain
issues, causes of action, or claims between the parties.
Jamal asserts that the issues disposed of
by the partial summary judgment were no longer "existing issues" at
the time the Arbitration Agreement was signed; therefore, the Agreement does not
encompass these matters. A summary judgment that does not dispose of all parties
and issues in the pending suit is interlocutory and not appealable unless a
severance of that phase of the case is ordered by the trial court. City of
Beaumont v. Guillory, 751 S.W.2d 491, 492 (Tex. 1988). It is proper for a
trial court to reconsider and reverse its prior interlocutory ruling on a
partial summary judgment. Elder Const., Inc. v. City of Colleyville,
839 S.W.2d 91, 92 (Tex. 1992), citing Cunningham v. Eastham, 465 S.W.2d
189, 192 (Tex. Civ. App.--Houston [1st Dist.] 1971, writ ref'd n.r.e.).
Accordingly, the partial summary judgment in this case was interlocutory and
subject to being reconsidered and set aside by the trial court. The trial court
could elect to re-examine the evidence on which the partial summary judgment was
based and could subsequently conclude that it does not support the judgment. See
Cunningham, 465 S.W.2d at 192. Therefore, the issues addressed in the
partial summary judgment were not finally disposed of and remained pending
between the parties at the time the Arbitration Agreement was signed.
Additionally, an examination of the
circumstances surrounding the formation of the Arbitration Agreement reveals
that although the partial summary judgment had been granted on several issues,(9)
the parties' pleadings still sought considerable relief:
The
divorce case:
Rola and Jamal: Each wants to be
appointed sole managing conservator of the two children, with the possessory
conservator ordered to pay child support. Each requests the court divide the
parties' community property -- Rola seeks a disproportionate share for herself,
Jamal states he wants a just and right distribution. Rola wants Jamal to pay her
attorney's fees.
In his counterclaim, Jamal alleges a
separate cause of action against Rola for "defamation and false
light," in which he seeks $250,000 actual damages and $1,000,000 exemplary
damages.
   
Rola and Osama: Rola seeks
reimbursement for all community funds tendered to Osama by Jamal, whether in the
form of a business or in community assets or in cash.
In his counterclaim, Osama seeks
attorney's fees from Rola or from the community estate of Rola and Jamal.
The
protective order case:
Jamal filed an application for a
protective order pursuant to section 81.001 of the Texas Family Code, seeking to
protect his two children from their maternal grandparents. See Tex. Fam.
Code Ann. § 81.001 (Vernon 2002). The court master held a hearing on the
application and denied it on February 27, 2002; Jamal was ordered to pay the
grandparents' attorney $3,350 in attorney's fees. The next day, Jamal filed a
notice of appeal from the master's recommendation. The record before us does not
contain any further orders or judgments in this case.
As evidenced by a review of the issues
that have yet to be addressed by the trial court in these two cases, the parties
still had much to resolve on the date the Arbitration Agreement was signed.
Applying the pertinent rules of contract
construction, we conclude the Arbitration Agreement is worded so that it can be
given only one certain or definite legal meaning or interpretation, and it is
therefore not ambiguous. We hold that as a matter of law the plain language of
the Arbitration Agreement expresses the intent of the parties that the scope of
the Agreement include all claims raised by the parties' pleadings in the two
cases before us up until September 25, 2002, the date the Agreement was signed
by the parties. The scope of the Arbitration Agreement therefore includes all
claims and matters previously ruled upon by the trial judge in the partial
summary judgment. Accordingly, we hold that the trial court abused its
discretion in finding the Arbitration Agreement to be invalid and in denying
Appellants' motions to stay litigation and compel arbitration under the Texas
General Arbitration Act. We sustain Appellants' first and third issues.
Conclusion
We reverse the trial court's orders
denying Appellants' motions to stay litigation and to compel arbitration in
these two consolidated cases. We render judgment that the Arbitration Agreement
signed by the parties is valid and enforceable and covers all disputes between
the parties that arose prior to the date the parties signed the Arbitration
Agreement, including all matters that were the subject of the partial summary
judgment previously granted by the trial court.
 
                                                       
   DIXON W. HOLMAN
                                                       
   JUSTICE
 
PANEL A: CAYCE, C.J.; DAY and HOLMAN, JJ.
 
DELIVERED: May 8, 2003

1. Cause No. 76-184050-00 is not part of these
consolidated appeals and is not pending before this court.
2. See Tex. Civ. Prac. & Rem. Code Ann. §§
171.021, 171.025 (Vernon Supp. 2003).
3. Osama did not attend the hearing. His attorney informed
the court that the attorney was not present when the two arbitration documents
were signed, he did not sign the documents on behalf of his client, and he could
not agree that the signature on the documents belonged to his client. The court,
however, determined the signature belonged to Osama.
4. Appellants' attorney stated that after she became
involved in the case she filed a motion to set aside the partial summary
judgment.
5. Osama's attorney attempted to persuade the trial court
to sever the partial summary judgment from the remainder of the case so the
judgment in favor of his client could be final. The court denied the motion to
sever.
6. See Tex. R. App. P. 28.1 ("The trial
court need not, but may--within 30 days after the order is signed--file findings
of fact and conclusions of law.").
7. The divorce suit is appeal no. 2-02-416-CV; the
protective order suit is appeal no. 2-02-415-CV. This court previously granted
Appellants' motion to consolidate the two suits for purposes of appeal.
8. Appellee Osama is proceeding pro se on appeal and has
not filed an appellee's brief.
9. The court held the Islamic Marriage Certificate was
unenforceable, the house on Gladstone Drive is the separate property of Jamal,
the house on Vesta Via Court belongs to Osama, and two certificates of deposit
were never the community property of Rola and Jamal and belong solely to Osama.