

## MEMORANDUM OPINION

No. 04-08-00675-CV

S. Stacy **EASTLAND**, Nancy Eastland **LEATON,**
Appellants[1]

v.

**CAMP MYSTIC, INC.**, Richard G. **EASTLAND**, Willetta ("Tweety") **EASTLAND**, and
James M. **EASTLAND**

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 07-0728-B, the Honorable Emil Karl Prohl presiding

No. 04-08-00741-CV

**IN RE** S. Stacy **EASTLAND** and Nancy E. **LEATON**

Original Mandamus Proceeding[2]

Opinion by:      Phylis J. Speedlin, Justice

Sitting:         Karen Angelini, Justice
                 Phylis J. Speedlin, Justice
                 Steven C. Hilbig, Justice

Delivered and Filed:   February 4, 2009

TRIAL COURT'S ORDER DENYING ARBITRATION AFFIRMED; PETITION FOR WRIT OF
MANDAMUS DISMISSED FOR LACK OF JURISDICTION

---

[1] Appellants' notice of appeal and the style of appellants' brief lists George B. Stacy and Philip Stacy as appellants.  However, George B. Stacy and Philip Stacy have not sought relief from this court.  In addition, the record indicates that George B. Stacy and Philip Stacy were dismissed as parties from the underlying suit.

[2] This proceeding arises out of Cause No. 07-0728-B, *Camp Mystic, Inc., et al. v. S. Stacy Eastland, et al*., pending in the 198th Judicial District Court, Kerr County, Texas, the Honorable Emil Karl Prohl presiding.

In these consolidated proceedings, S. Stacy Eastland and Nancy Eastland Leaton (collectively "appellants") complain of the trial court's order denying their motion to compel arbitration.[3] We dismiss the petition for writ of mandamus for lack of jurisdiction and affirm the trial court's order denying appellants' motion to compel arbitration.

### FACTUAL AND PROCEDURAL BACKGROUND

Camp Mystic is a summer camp for girls in Hunt, Texas. Until June of 1998, it was a family owned and operated company named Camp Mystic, Inc. ("Old CM"). In 1998, the family restructured Old CM when they created a new company, Camp Mystic, Inc. ("New CM"), and changed Old CM's name to Natural Fountains Properties, Inc. ("NFP"). After restructuring the company, NFP continued to own the real estate where the camp was located and leased it to New CM under the Ground and Building Lease ("lease"). Richard Eastland ("Dick") and his wife Willetta Eastland ("Willetta") are the sole owners of New CM and they run the Camp Mystic operations. NFP currently has numerous shareholders, including appellants who are minority shareholders, and Dick who is a majority shareholder.

Under the lease between New CM and NFP, New CM operates the camp on the leased premises and pays rent to NFP under the provisions of the lease. The rent and arbitration provisions of the lease, provides as follows:

> Section 3.02. The annual rent due (herein called "Annual Rent Due") hereunder shall be that certain product obtained by multiplying the Replacement Cost of the Demised Premises on January 1 of each year, as reasonably determined by Landlord, by the greatest of the then (i) Federal Short-Term Rate, (ii) Federal Mid-Term Rate, (iii)

---

[3] Appellants' motion for leave to file amended notice of appeal was granted by this court, to the extent that it includes appellants both individually and derivatively on behalf of Natural Fountains Properties, Inc.

Federal Long-Term Rate or (iv) six and one-half percent (6.5%). *If there is any dispute in any year as to the Replacement Cost of the Demised Premises it shall be resolved by arbitration pursuant to procedures outlined in Exhibit 2 and incorporated herein* with rent being payable based on Landlord's determination until resolution of the issue, with an appropriate cash adjustment (if necessary) being made within 30 days thereafter.   For the remaining period of 1998, the Annual Rent Due shall be Three Hundred Thousand Dollars ($300,000).

After operating under the lease for a number of years, a dispute arose between appellants and Dick concerning the amount of the rent that New CM had been paying under the rent provision in the lease.  Dick, Willetta, and New CM ( collectively "appellees") filed a declaratory judgment action, naming as defendants NFP and some of the individual shareholders of NFP, which included appellants.  The suit sought a declaration of appellees' rights under the lease, including in part that Camp Mystic, Inc. had fully paid the rent in compliance with the lease and that the arbitration provisions in the lease were indefinite and unenforceable.  Appellants counterclaimed, seeking declaratory relief against appellees, conversion of the Camp Mystic trademark, and individual and derivative claims on behalf of NFP for breach of the lease and fiduciary duties.

Thereafter, appellees filed a motion for partial summary judgment on their declaratory judgment claim, arguing in part that the rent and arbitration provisions of the lease are unenforceable. Before the trial court ruled on the motion for partial summary judgment, appellants filed a motion to compel arbitration.  The trial court then entered an order on the motion for partial summary judgment, holding the rent and arbitration provisions unenforceable.  After holding a hearing on the motion to compel arbitration, the trial court denied the motion.  The trial court held in part that the Federal Arbitration Act ("FAA") does not apply to the transaction and found that in

accordance with the findings of the trial court's order granting the motion for partial summary judgment, the arbitration provision in the lease is unenforceable.

Appellants seek review of the trial court's order denying appellants' motion to compel arbitration through a petition for writ of mandamus, in compliance with the FAA, and through an interlocutory appeal, in compliance with the Texas Arbitration Act ("TAA"). *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269-70 (Tex. 1992) (relief from the denial of arbitration sought under the FAA must be reviewed by mandamus); TEX. CIV. PRAC. & REM. CODE. ANN. § 171.098(a)(1) (Vernon 2006) (relief from the denial of arbitration sought under the TAA must be reviewed by interlocutory appeal).

## ANALYSIS

A.      Mandamus or Interlocutory Appeal

As a preliminary matter, we first address whether this court has jurisdiction over the petition for writ of mandamus and the interlocutory appeal. The lease agreement upon which appellants rely in order to compel arbitration does not purport to be governed by either the FAA or the TAA. Therefore, in their motion to compel arbitration appellants sought arbitration under both the FAA and the TAA. However, the trial court found that the FAA did not apply. Because the applicability of the FAA affects our jurisdiction to consider the petition for writ of mandamus, we must review the trial court's determination that the FAA does not apply.

When there is no express agreement to arbitrate under the FAA, a party may establish the applicability of the FAA by showing that the transaction affects or involves interstate commerce. *See, Anglin*, 842 S.W.2d at 269-70; *Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 511 (Tex. App.—San Antonio 2004, orig. proceeding); *see also Allied-Bruce Terminix Co. v.*

*Dobson*, 513 U.S. 265, 279 (1995) (holding that "the 'transaction' *in fact* involve interstate commerce"). When, as here, the arbitration agreement is silent as to whether the FAA or the TAA applies, the question of whether the transaction affects interstate commerce is one of fact. *See e.g.*, *Associated Glass*, 147 S.W.3d at 511; *Stewart Title Guar. v. Mack*, 945 S.W.2d 330, 333 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding [leave denied]); *see also Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 696 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Interstate commerce has been defined as "trade, commerce, transportation, or communication among the several States, or between any foreign country and any place or ship outside thereof." *See Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th. Cir. 1997) (citing 15 U.S.C. § 78c(a)(17)). "The burden is on the party seeking to compel arbitration to establish its right to arbitrate under the Federal Arbitration Act." *Ikon*, 2 S.W.3d at 696.

The only material evidence before the trial court with regard to the motion to compel arbitration consisted of the motion, the response, and the lease agreement. In the motion to compel arbitration, appellants only provided one sentence to support their contention that the FAA applied: "It is undisputed that NFP is a closely held corporation . . . and that the camping business operated by New CM on NFP property involves interstate commerce invoking the Federal Arbitration Act." In response, appellees noted that both New CM and NFP are Texas Corporations, the property that is the subject of the lease is in Kerr County, Texas, and NFP is not involved in the camp operations or in any sale of goods; accordingly, the lease transaction between New CM and NFP did not involve interstate commerce, and the TAA, not the FAA applied.

Now, appellants argue to this court that the lease itself is evidence that the property is rented for the exclusive operations of a girls' summer camp, and some of the campers and counselors came

from out of state, as evidenced by a Camp Mystic brochure. However, the brochure was not before the trial court with regard to the motion to compel arbitration, and was never used by appellants in the trial court to support their contention that the transaction affected interstate commerce. In addition, the transaction at issue concerns the lease of real estate located in Texas between NFP, a Texas corporation, and New CM, also a Texas corporation. No evidence was introduced in the trial court that shows the lease transaction affects interest commerce. Therefore, based on the evidence before the trial court, we cannot say the trial court erred in finding the FAA does not apply.

Appellants now attempt to make an additional argument to this court that the transaction affects interstate commerce because Dick has filed documents with the U.S. Patent and Trademark Office averring that the Camp Mystic trademark has been in continuous use in interstate commerce for at least five years. However, these documents were not before the trial court with regard to the motion to compel arbitration. In addition, the use of the Camp Mystic trademark in interstate commerce does not mean that the lease transaction between NFP and New CM involved interstate commerce. Accordingly, because we agree with the trial court that the FAA does not apply, we dismiss appellants' petition for writ of mandamus for lack of jurisdiction and proceed to consider the merits of the interlocutory appeal.

B.    Motion to Compel Arbitration

In its order denying appellants' motion to compel arbitration, the trial court found that the arbitration clause in the lease was, by its very own language, not enforceable. Although appellants do not specifically challenge the validity of the trial court's finding that the arbitration clause is unenforceable, we must consider the merits of that finding. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (holding that when a party resists arbitration, the trial court must

determine whether a valid agreement to arbitrate exists). The trial court's determination as to the validity of an arbitration agreement is subject to de novo review. *Id.* Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *Id.* Under both the FAA and the TAA, we apply ordinary state contract law principles in order to decide whether a valid arbitration agreement exists. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The lease provides that annual rent due is determined by multiplying one of four specified rates by the "Replacement Cost of the Demised Premises" on January 1 of each year. The lease also sets forth three relevant definitions. "Demised premises" is defined as "the Demised Land and the Buildings." The lease then defines "Demised Land" as "those certain lands known generally as Camp Mystic . . . together with all easements and rights appurtenant thereto." Finally, "Replacement Cost of Demised Premises" is defined as "the then current cost (construction, architectural, engineering or otherwise) of replacing the Demised Premises . . . ." At the trial court's summary judgment hearing, appellees successfully argued to the trial court that the "replacement cost" of the real estate portion of the demised premises is not ascertainable because "replacement cost" cannot be assigned to real property since real property is individually unique and cannot be replaced. The trial court agreed with appellees, providing in the order granting the motion for partial summary judgment as follows:

> The lease agreement defines 'Demised Premises' to include the real estate as described in Exhibit A. A tract of real estate is individually unique. It is not 'replaceable.' A fair market value may be assigned to the 'real property'; however, this is not the same as the 'Replacement Costs' of the real property.

> The Arbitration Procedures set forth in Exhibit 2 call for two real estate appraisers to determine the 'Replacement costs of Demised Premises' which includes the real estate. Since the 'Replacement Cost' of the real estate portion of the demised premises in[sic] not ascertainable and is not the same as Fair Market Value, the Arbitration Procedures are rendered unenforceable.

In ruling on the motion to compel arbitration, the trial court's order incorporated its prior findings from the order granting appellee's motion for partial summary judgment, holding again that the arbitration clause in the lease agreement is by its very language unenforceable. We agree that the "replacement cost" of the real estate is not ascertainable because "replacement cost" cannot be assigned to real property since real property is individually unique and is not replaceable. *See Metro. Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*, 762 S.W.2d 646, 652 (Tex. App.—San Antonio 1998, writ dism'd) (holding that "[e]very piece of real property is considered unique"); *Home Sav. of Am., F.A. v. Van Cleave Dev. Co.*, 737 S.W.2d 58, 59 (Tex. App.—San Antonio 1987, no writ). Accordingly, under the lease, we agree with the trial court that because of the language used in the lease agreement, the arbitration agreement was not enforceable.

Appellants challenge the trial court's determination that the trial court, not the arbitrator, is to decide whether the arbitration provision is enforceable. Appellants specifically assert that issues regarding the validity of a contract as a whole are matters for the arbitrator to decide. *See Dewey v. Wegner*, 138 S.W.3d 591, 602 (Tex. App.—Houston [14th Dist.] 2004, no pet.). However, as previously mentioned, the trial court is charged with determining whether a valid agreement to arbitrate exists. *See Webster*, 128 S.W.3d at 227. Additionally, the Texas Supreme Court has held that "the authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication." *Gulf Oil Corp. v.*

*Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959) (considering the arbitrator's authority to make a determination on an issue once the case has been submitted to arbitration). Here, the plain language in exhibit 2 of the lease sets forth the very limited role of the arbitrator, and that limited role does not include determining whether the arbitration provision is enforceable.

According to the lease, if the parties disagree on the replacement cost of the demised premises, each party appoints one appraiser, who then provides a written opinion of the replacement cost of the demised premises. Then, "[i]f the two opinions of Replacement Cost of Demised Premises are the same, they shall be binding on all parties involved as the final determination of Replacement Cost of Demised Premises . . . . If the two opinions differ, and the parties to the dispute still cannot agree on Replacement Cost of the Demised Premises, the parties shall apply for arbitration of the dispute . . . ." When the issue goes to arbitration, "[t]he arbitrator . . . shall determine Replacement Cost of Demised Premises by selecting one of the opinions rendered by the two appraisers and submitted to the AAA." In other words, based on the agreement at issue, the arbitrator is not charged with any underlying calculations, but simply chooses between one of the two opinions submitted. As a result, it was proper for the trial court, not the arbitrator, to decide whether the underlying lease, defining "replacement cost of demised premises," was enforceable. *See Webster*, 128 S.W.3d at 227.

Appellants also allege that the trial court refused to compel arbitration because it disagreed with the style of the arbitration, which appellants define as "baseball arbitration." However, this allegation assumes that the trial court made its decision that the arbitration provision is unenforceable based on its disagreement with the procedures set out for arbitration. We find nothing in the record before us to support such a claim.

## CONCLUSION

As a result of the foregoing, we dismiss the petition for writ of mandamus for lack of jurisdiction and affirm the trial court's order denying appellants' motion to compel arbitration. Our stay order, entered October 15, 2008, is vacated.


Phylis J. Speedlin, Justice