Argued and submitted May 9, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings September 8, 2006

INDUSTRA/MATRIX JOINT VENTURE,
an Oregon joint venture,
a/b/n of Matrix Service, Inc.,
*Respondent on Review,*

*v.*

POPE & TALBOT, INC.,
an Oregon corporation,
*Petitioner on Review.*

(CC 0112-12723; CA A121936; SC S52674)

142 P3d 1044

Guy A. Randles, of Stoel Rives LLP, Portland, argued the cause and filed the brief for petitioner on review. With him on the brief was Charles F. Adams.

Julia E. Markley, of Perkins Coie LLP, Portland, argued the cause and filed the brief for respondent on review. With her on the brief were Michael H. Simon, of Perkins Coie LLP, and Rodney R. Mills and Daniel Gragg, of Seifer Yeats Mills & Zwierzynski LLP, Portland.

BALMER, J.

**BALMER, J.**

This case requires us to determine whether claims based on breach of contract and *quantum meruit* must go to arbitration under an agreement between the parties to arbitrate certain matters. Industra/Matrix Joint Venture (plaintiff) initiated this action, seeking $2.6 million in damages from Pope & Talbot, Inc. (defendant). Plaintiff later filed a petition to compel arbitration and to abate the action pending arbitration. Defendant opposed that petition and also filed a motion for summary judgment asserting that plaintiff was statutorily precluded from commencing either litigation or arbitration because plaintiff was not properly licensed by the Oregon Construction Contractors' Board (CCB). The trial court denied plaintiff's petition and granted defendant's motion. On appeal, the Court of Appeals reversed and remanded, holding that plaintiff's claims were arbitrable and that legal issues related to plaintiff's claims, including the CCB license issue, should be decided by the arbitrator. *Industra / Matrix Joint Venture v. Pope & Talbot*, 200 Or App 248, 113 P3d 961 (2005). We allowed defendant's petition for review and now affirm the decision of the Court of Appeals.

## I. FACTS

We take the facts from the Court of Appeals opinion and the record. In March 2000, Matrix Service, Inc. (Matrix), an Oklahoma corporation, and Industra Service Corporation (Industra), a Washington corporation, signed a "Joint Venture Partnership Agreement" to form plaintiff. The joint venture's limited purpose was to enter into two contracts with defendant for the construction and installation of piping and mechanical equipment at defendant's pulp mill in Halsey, Oregon. At all times during the performance of those contracts, Matrix and Industra individually held licenses from the CCB; plaintiff, however, did not.

Both construction contracts contain an identical set of "General Conditions" (GC), three of which—GC 5, GC 27, and GC 35—are relevant here. Under GC 5, the contracts provide for an "Engineer" to be "the interpreter of the requirements of the Contract Documents and the judge of the performance thereunder by both parties." Accordingly,

"[c]laims, disputes, and other matters in question relating to the performance of the Work or the interpretation of the Contract Documents shall be referred initially to the Engineer in writing for a decision[.]"[1]

Under GC 27, respecting "Claims," plaintiff is required to "immediately notify the Engineer in writing of any occurrence which * * * has caused or might cause, a substantial delay in the progress or completion of the Work." Additionally, if plaintiff "believes that the alleged delay was occasioned for reasons beyond [its] control, [plaintiff] may also submit a claim to the Engineer to compensate [it] for such delay." The engineer is then required to review the claim and if, in the engineer's opinion, the claim is "justified," issue a work order to cover the cost. If either plaintiff or defendant disputes the engineer's opinion, then "the validity of the claim will be determined by arbitration."

GC 35 relates to "Disputes and Arbitration." It provides, in part:

> "Differences between the parties to the Contract as to the interpretation, application, or administration of this Contract or any failure to agree where agreement between the parties is called for (herein collectively called the 'Dispute') which are not satisfactorily resolved in the first instance by a decision of the Engineer pursuant to the provisions of GC 5 - Engineer shall be settled in accordance with the provisions of this General Condition."

GC 35 further provides that, if the party raising the "Dispute" disagrees with the engineer's decision under GC 5, then that party may give "written notice to the other party" within 30 days of receiving the engineer's decision that the party "requires the Dispute to be settled in accordance with [GC 35]." After receipt of that notice, the parties are required to "attempt to resolve the Dispute by agreement[.]" If they are

---

[1] We note that the record does not contain the full agreement between the parties, including certain provisions of GC 5 that apparently relate to the responsibilities of the project engineer. However, the provisions of GC 5 that are in the record provide that the "duties, responsibilities, and limitations of authority of the Engineer * * * will not be modified or extended without the written consent of [defendant]," and neither party asserts that those duties were modified by any subsequent agreement.

unable to do so, either party may "refer such matter to arbitration for resolution," provided that the dispute "is not excluded from the application of arbitration by [six enumerated exceptions.]" That arbitration requirement and the only one of the six exceptions that the parties assert is relevant here provide as follows:

"Except for disputes between [the parties] relating to:

"* * * * *

"35.5.6 The damages to which either [party] may be entitled at law on account of a breach of the Contract by the other of them;

"all disputes between [the parties] which are not settled satisfactorily either by the Engineer or by the agreement of [the parties] shall be resolved by arbitration in accordance with the following procedures[.]"

Finally, the "procedures" enumerated in GC 35 provide, among other things, that "The Arbitration Act of Oregon, for the time being in force, shall apply to any arbitration hearings."

Due to various problems encountered during construction, plaintiff did not complete the project until after the scheduled completion date, and both parties incurred unanticipated expenses. Each party contends that the other is responsible for the delay and the resulting expenses.

## II.  PROCEEDINGS BELOW

In December 2001, plaintiff initiated this action for breach of contract and *quantum meruit*. Plaintiff alleged, among other things, that it had "incurred additional costs and expenses" due to "major delays and inefficiencies in performing the work" caused by defendant's failure to perform under the contracts. Quoting GC 27, plaintiff also alleged in its complaint that the construction agreement between the parties provides that the validity of its claims " 'will be determined by arbitration.' "

Subsequently, the parties engaged in discovery in preparation for trial. On January 3, 2003, plaintiff filed a second amended complaint, seeking $2.6 million in damages—the amount that plaintiff claimed that it had expended in

labor, materials, and equipment ($5 million) reduced by the amount that defendant had paid to plaintiff ($2.4 million)— and a petition to compel arbitration and to abate the action pending arbitration. *See former* ORS 36.310 (2001) (providing procedure for party to seek court order compelling arbitration); *former* ORS 36.315 (2001) (authorizing court to abate action of issue referable to arbitration).[2] On January 17, 2003, defendant filed a motion for summary judgment on the grounds that plaintiff's claims were barred by ORS 701.065(1) because plaintiff did not have a valid CCB license at the time that it had bid on or entered into the contracts or continuously while it had performed the work.[3]

In support of its petition, plaintiff argued that its claims were subject to arbitration under GC 35 and were not excluded by the one relevant exception for "disputes * * * relating to * * * damages to which either [party] may be entitled at law on account of a breach of the Contract * * *."

---

[2] When this action was filed, the 2001 version of the Oregon Arbitration Act (OAA), ORS 36.300 to 36.365, was in effect. In 2003, the legislature repealed the OAA, Or Laws 2003, ch 598, § 57, and enacted a version of the Uniform Arbitration Act (UAA). *Id.* §§ 1-30. Because this action was commenced before the effective date of that act, *former* ORS 36.300 to 36.365 (2001) continues to apply to this case. Or Laws 2003, ch 598, § 31. *Former* ORS 36.310 (2001) provided, in part:

"A party aggrieved by the failure, neglect or refusal of another to perform under a contract or submission providing for arbitration * * * shall petition the circuit court, or a judge thereof, for an order directing that the arbitration proceed in the manner provided for in the contract or submission. * * * The court or judge shall hear the parties, and if satisfied that the making of the contract or submission or the failure to comply therewith is not an issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the contract or submission."

[3] ORS 701.065(1) provides:

"Except as provided in subsection (2) of this section, a contractor may not perfect a claim of a construction lien, or commence a claim with the Construction Contractors Board, in arbitration or in any court of this state for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter, unless the contractor had a valid license issued by the board:

"(a) At the time the contractor bid or entered into the contract for performance of the work; and

"(b) Continuously while performing the work for which compensation is sought."

ORS 701.065(2) provides a series of exceptions and directs that, when they apply, the "board, arbitrator or court shall not apply the provisions of [ORS 701.065(1)] to a lien or claim[.]" Our disposition of this case does not require us to consider any of those exceptions.

Further, according to plaintiff, because the parties' agreement involved interstate commerce, the Federal Arbitration Act (FAA), 9 USC sections 1 to 16, applied, which required the entire matter to go to arbitration. Plaintiff contended that the provision in the contracts that referred to the Oregon Arbitration Act (OAA) governed only the procedures for the arbitration hearing itself.

Defendant responded, first, that plaintiff had failed to satisfy two conditions precedent to arbitration: (1) obtaining a CCB license as required by ORS 701.065(1), and (2) submitting its claims to the engineer for initial review and determination as required by the contracts. Claiming that the contractual reference to the OAA governed all arbitration matters, defendant argued that Oregon law required the *court* to determine whether plaintiff had fulfilled those conditions precedent to arbitration. For that proposition, defendant relied on *Moresi v. Nationwide Mutual*, 96 Or App 61, 64, 771 P2d 301 (1989), *rev'd on other grounds*, 309 Or 619, 789 P2d 667 (1990) (applying state law; " 'conditions precedent' are matters for judicial determination when they involve the conditions that the parties agreed on about access to the arbitral forum"). Second, defendant argued that plaintiff was not a "party aggrieved by the failure, neglect or refusal of another" to perform under an arbitration clause, *former* ORS 36.310 (2001), because plaintiff had not made a written demand for arbitration in accordance with GC 35 of the contracts. Third, defendant argued that plaintiff had waived its right to demand arbitration by filing that request more than one year after it had filed a civil action against defendant and by taking advantage of judicial discovery procedures not available in arbitration.

The trial court denied plaintiff's petition in a letter opinion. The trial court agreed with defendant's threshold argument that the contractual reference to the OAA required the application of Oregon law to all arbitration matters and not only to the procedures for the arbitration hearing. Turning to the substantive issues, the trial court agreed with the first two of defendant's arguments: that plaintiff had not performed its contractual conditions precedent because it had not submitted the dispute to the project engineer or made a formal, written demand for arbitration and that plaintiff had

not met the statutory condition precedent that it be properly licensed under ORS 701.065(1) before asserting its claim.[4] Accordingly, the trial court denied plaintiff's petition to compel arbitration. Thereafter, the trial court granted defendant's motion for summary judgment pursuant to ORS 701.065(1), based on the fact that plaintiff did not have a CCB license.

Plaintiff appealed, arguing, first, that the trial court had erred in refusing to compel arbitration and, second, that, even if the petition to compel arbitration properly had been denied, the trial court had erred in granting defendant's summary judgment motion because issues of material fact existed as to whether plaintiff was exempt from the CCB license requirement under ORS 701.065(2).

As noted, the Court of Appeals reversed. The court held that the trial court had erred in concluding that the contractual reference to the OAA required the application of that statute to prearbitration issues. It determined instead that the text and context of that provision unambiguously indicated that the parties intended Oregon law to govern the conduct of the arbitration hearing and that nothing in the agreement indicated that they intended Oregon law to apply to prearbitration issues. *Industra/Matrix*, 200 Or App at 255. In those circumstances, the court held that prearbitration issues were to be decided under the FAA. *Id.* Applying that statute, the court concluded that the parties' dispute was arbitrable because it precisely framed the kind of issue that fell within the scope of GC 35, that is, plaintiff's claims involved "an unresolved dispute over the application or administration of the contract and failure to agree where agreement between the parties [was] called for," and none of the exceptions identified in GC 35 applied. *Id.* at 258, 259.

The Court of Appeals also held that, under the FAA, the arbitrator should decide whether plaintiff met the statutory and contractual preconditions to arbitration. *Id.* at 261. Accordingly, the court concluded that the trial court had erred in denying plaintiff's petition to compel arbitration

---

[4] Based on the record before it, the trial court rejected defendant's third argument, finding that plaintiff had not waived its right to arbitration.

and, consequently, in considering the merits of defendant's summary judgment motion. *Id.* at 253. We allowed defendant's petition for review.

## III.  ANALYSIS

### A.  *Applicable Law: The FAA or the OAA*

■       As an initial matter, we must determine whether Oregon law or federal law applies to the resolution of the arbitrability issues this case presents. Based on United States Supreme Court decisions interpreting the scope of the FAA, we conclude that that statute applies, for the reasons that we discuss below.

■       Section 2 of the FAA provides, in part:

> "A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 USC § 2. "The effect of [that] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 US 1, 24, 103 S Ct 927, 74 L Ed 2d 765 (1983). And that substantive federal law of arbitrability—whether, under a contractual arbitration clause, a particular dispute must be decided by arbitration rather than in court—applies "even in the context of state-law claims brought in state court." *Buckeye Check Cashing v. Cardegna*, 546 US 440, 126 S Ct 1204, 1209, 163 L Ed 2d 1038 (2006). The Supreme Court summarized the FAA's "coverage" in *Allied-Bruce Terminix Cos. v. Dobson*, 513 US 265, 270-81, 115 S Ct 834, 130 L Ed 2d 753 (1995), holding that section 2 of the FAA applied to arbitration agreements included in a transaction that involved interstate commerce, regardless of whether the parties contemplated an interstate commerce connection when drafting their agreement. *See also Perry v. Thomas*, 482 US 483, 490, 107 S Ct 2520, 96 L Ed 2d 426 (1987) (stating that FAA "embodies Congress' intent to provide for the enforcement of

arbitration agreements within the full reach of the Commerce Clause").

■■  The expansive reach of the FAA, however, does not necessarily negate an agreement between contracting parties to apply a particular state's substantive contract law to their dispute or a state's procedural rules to their arbitration hearing. Under the FAA, the courts will "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences v. Leland Stanford Jr. U.*, 489 US 468, 478, 109 S Ct 1248, 103 L Ed 2d 488 (1989). Hence, a contractual provision calling for the application of a particular state's law to the parties' agreement is valid, provided that it does not "undermine the goals and policies of the FAA." *Id.* at 478 (upholding choice of law provision calling for application of California procedural rule to arbitration agreement because it did not conflict with substantive features of FAA).

Here, neither party disputes the fact that their contracts involve interstate commerce: plaintiff itself is multistate in nature—Industra is a Washington corporation and Matrix is an Oklahoma corporation—and defendant is an Oregon corporation. As noted above, however, the parties disagree as to the scope of the contractual reference to the OAA. Plaintiff argues that the Court of Appeals correctly held that the provision demonstrates "that the parties intended the OAA to govern the conduct of the hearing" but that "nothing indicates an intention to choose Oregon law to govern resolution of the legal issues involved in determining whether a hearing should occur." *Industra / Matrix*, 200 Or App at 255. Defendant responds that the parties intended Oregon law to apply to the question of whether a particular dispute must be arbitrated and to questions of substantive contract law.

We agree with plaintiff. The contractual reference to the OAA in the present case requires only that "any arbitration *hearings*" be governed by the OAA. (Emphasis added.) That provision says nothing about issues that might arise and require resolution before a hearing. And, *ipso facto*, it does not speak to the source of law governing the way in which any such issues should be resolved or by whom. In contrast, the choice of law provision upheld in *Volt* provided that

"[t]*he Contract shall be governed* by the law of the place where the Project is located." 489 US at 470 (emphasis added). In view of the limited scope of the parties' contractual reference to the OAA, we cannot conclude that the parties intended that the issue whether this dispute is arbitrable should be decided under the OAA. In such circumstances, and in view of the interstate nature of this transaction, it follows that the arbitration agreement in the contracts at issue here falls within the coverage of the FAA and that statute therefore applies.

B. *"Substantive" and "Procedural" Arbitrability Under the FAA*

■  Having concluded that the FAA governs the parties' arbitration agreement, we now turn to the federal cases applying that statute to determine who decides whether plaintiff's claim should be presented to an arbitrator or to a court. As discussed below, the FAA requires that questions of "substantive" arbitrability be decided by the court and questions of "procedural" arbitrability be decided by the arbitrator.

■■  Arbitration under the FAA is based on contract. "[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Steelworkers v. Warrior & Gulf Co.*, 363 US 574, 582, 80 S Ct 1347, 4 L Ed 2d 1409 (1960). Accordingly, before a court may compel arbitration under the FAA, it must determine (1) whether the parties are bound by a valid arbitration agreement; and (2) if so, whether the particular type of controversy between the parties is within the scope of that agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 US 79, 84, 123 S Ct 588, 154 L Ed 2d 491 (2002); *see also AT&T Technologies v. Communications Workers*, 475 US 643, 649, 106 S Ct 1415, 89 L Ed 2d 648 (1986) ("the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator").

■  Thus, a court, in construing a valid arbitration agreement within the coverage of the FAA, applies ordinary principles of state contract law to determine whether the parties have agreed to arbitrate a particular dispute. *First Options of Chicago, Inc. v. Kaplan*, 514 US 938, 944, 115 S Ct

1920, 131 L Ed 2d 985 (1995). In doing so, however, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone*, 460 US at 24-25; *see also Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 US 614, 626, 105 S Ct 3346, 87 L Ed 2d 444 (1985) ("[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

Decisions construing the FAA, however, distinguish the issue of substantive arbitrability—whether the parties intended an arbitration clause to cover a particular type of dispute—from other "gateway" questions of arbitrability that the "parties would likely expect that an arbitrator [will] decide[.]" *Howsam*, 537 US at 84. Those issues include " 'procedural' questions which grow out of the dispute and bear on its final disposition," *John Wiley & Sons v. Livingston*, 376 US 543, 557, 84 S Ct 909, 11 L Ed 2d 898 (1964), as well as "allegation[s] of waiver, delay, or a like defense to arbitrability," *Moses H. Cone*, 460 US at 25. With that background in mind, we turn to the merits of the present dispute.

C. *Scope of the Parties' Arbitration Agreement*

■■■■ Here, the parties do not dispute that a valid, binding arbitration agreement exists between them. At issue is the scope of that agreement—*i.e.*, whether plaintiff's claims fall within its ambit and, therefore, must be arbitrated. Accordingly, we must determine whether the parties intended their arbitration agreement to include the present controversy by examining the text and context of the provision. *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). If the provision proves to be unambiguous, then our analysis is complete and we give the appropriate effect to the parties' intentions. *Id.* "In the absence of an ambiguity, the court construes the words of a contract as a matter of law." *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). If an examination of the text and context reveals an ambiguity, we resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *Moses H. Cone*, 460 US at 24-25; *see also Volt*, 489 US at 475-76 ("[I]n applying general state-law

principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." (Internal citations omitted.)).

Applying the principles outlined above, we agree with the Court of Appeals that plaintiff's claims must go to arbitration. We begin our analysis with the text and context of the arbitration clause contained in GC 35 to determine whether that clause encompasses plaintiff's claims. As quoted above, GC 35 first sets out a broad definition of "Dispute" as "[d]ifferences between the parties to the Contract as to the interpretation, application, or administration of this Contract or any failure to agree where agreement between the parties is called for[.]" If the prearbitration measures discussed earlier do not resolve the dispute, then either party may refer the dispute to arbitration, provided that it is not excluded by one of the six enumerated exceptions. As noted, of those six exceptions, the parties identify only one as relevant here, *viz.*, the exception excluding from arbitration "disputes between [the parties] relating to * * * [t]he damages to which either [party] may be entitled at law on account of a breach of the Contract by the other of them[.]"

We next analyze plaintiff's two claims to determine whether they are "disputes" that fall within the overall scope of the arbitration provision of GC 35, and, if so, whether those claims nevertheless are excluded from arbitration because of the exception set out in GC 35.5.6.

Plaintiff's breach of contract claim alleges that plaintiff "has performed all conditions and conditions precedent it is required to perform under the provisions of its agreement with [defendant]" and has "incurred additional costs and expenses" as a result of various specified "contract breaches and violations of implied and express warranties" on the part of defendant. Those allegations clearly describe a dispute relating to the "interpretation, application, or administration" of the contract. As such, plaintiff's breach of contract claim falls within the scope of the parties' arbitration agreement.

With respect to plaintiff's *quantum meruit* claim, defendant argues that such an equitable claim "inherently" is not arbitrable because it is dependent on the *absence* of an enforceable contract, whereas the agreement to arbitrate is itself dependent on the existence of the contract. Therefore, defendant contends, plaintiff's *quantum meruit* claim cannot be determined on the basis of contract interpretation. Plaintiff argues, however, that its *quantum meruit* claim falls within the second part of the definition of "Dispute" as "any failure to agree where agreement between the parties is called for" because that phrase does not require a dispute to arise out of the parties' express contract for that dispute to be subject to the arbitration clause. Specifically, plaintiff asserts that, because it and defendant could not agree on the amount of payment to which plaintiff was entitled as a result of the construction work that it performed, its *quantum meruit* claim meets the definition of "Dispute" and is therefore arbitrable.

Contrary to defendant's argument, whether a *quantum meruit* claim is arbitrable *per se* is not the appropriate inquiry. Rather, the question for the court is "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy[.]" *Howsam*, 537 US at 84. Here, plaintiff's *quantum meruit* claim simply incorporates by reference the allegations set forth in the breach of contract claim, with the additional allegation that defendant would be unjustly enriched by $2.6 million "were it permitted to retain the goods and services provided to it by [plaintiff] without payment." In that respect, it "touch[es] matters" that undoubtedly are covered by the arbitration agreement, *Mitsubishi Motors*, 473 US at 624 n 13—the performance of the parties under the contract and the payment for plaintiff's work—and, thus, must be arbitrated, regardless of how the claim is labeled.

■ We therefore conclude that plaintiff's claims fall within the scope of matters that GC 35 requires to be arbitrated, unless they also fall within its explicit exception. As noted, GC 35 excepts from arbitration disputes relating to "[t]he damages to which either [party] may be entitled at law on account of a breach of the Contract by the other of them[.]" Defendant argues that a determination of plaintiff's breach of

contract claim is certainly "related to" and, in fact, "necessary" to any award of damages. In other words, defendant reads the exception to exclude from arbitration not only disputes "relating to" the amount of damages, but also disputes "relating to" their existence as well. Accordingly, defendant contends that plaintiff's breach of contract claim is thereby excluded from arbitration under the exception.

In our view, defendant's interpretation of the exception conflates two separate issues that may arise in a dispute between the parties: (1) breach, and (2) the amount of damages flowing from that breach. The text of the exception, however, does not conflate those issues but, rather, exempts disputes "relating to * * * damages" and then simply describes the type of damages so exempted as those to which either party may be entitled to "on account of a breach." Therefore, disputes relating to the *amount* of damages on account of a contractual breach are excluded from arbitration, but, contrary to defendant's position, liability disputes that may entitle either party to such damages are not. That construction of the exception gives effect to all provisions of GC 35. *See* ORS 42.230 ("where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all").

In any event, we note that, were we to agree that defendant's interpretation of the exception in GC 35 is reasonable and, therefore, demonstrates an ambiguity in the exception,[5] we nevertheless would be required to resolve that ambiguity in favor of arbitration. That is so because, when the scope of an arbitration provision within the coverage of the FAA is at issue, any ambiguity must be resolved in favor of arbitration. *Volt*, 489 US at 475-76. Consequently, we hold that the liability portion of plaintiff's breach of contract claim and the entirety of its *quantum meruit* claim are not exempt from arbitration under the language of the exception.

---

[5] *See Pacific First Bank v. New Morgan Park Corp.*, 319 Or 342, 348, 876 P2d 761 (1994) ("Words or terms of a contract are ambiguous when they reasonably can, in context, be given more than one meaning.").

## D. *Defendant's CCB License Argument*

■ Finally, defendant argues that, even if plaintiff's claims are subject to arbitration under the contracts, the threshold issue of whether plaintiff is barred from seeking compensation by ORS 701.065(1) is one for the court, rather than the arbitrator. Defendant contends that whether an unlicensed contractor, like plaintiff, "lawfully may commence arbitration is—as a matter of law—a question of substantive arbitrability solely for the court to decide, * * * absent clear and unmistakable evidence that the parties intended otherwise." Quoting *Howsam*, defendant asserts that a dispute over whether a contractor was licensed, or is entitled to invoke one of the exceptions in ORS 701.065(2), is " 'a gateway dispute about whether the parties are bound by a given arbitration clause.' " 537 US at 84. As defendant recognizes, ORS 701.065(2) specifically refers to an "arbitrator," indicating that the legislature assumed that, at least in some circumstances, the issue whether an unlicensed contractor could bring a claim for compensation would be presented to an arbitrator rather than a court. Defendant argues, however, that those circumstances are limited to when the agreement demonstrates "clear and unmistakable evidence" that the parties agreed to arbitrate the issue of arbitrability. Here, defendant continues, there is no such evidence in the parties' agreement of an intent to empower the arbitrator to decide whether defendant was obligated to arbitrate with an unlicensed contractor. Plaintiff counters that ORS 701.065(1) provides a "defense to arbitrability," *Moses H. Cone*, 460 US at 25, and, as such, presents a question of procedural arbitrability for the arbitrator to decide.

We agree with plaintiff that the license issue is one of procedural arbitrability that should be decided by the arbitrator. Certainly, the issue does not present a "gateway dispute" about whether the parties are bound by the arbitration provision. As noted above, that threshold matter involves a two-pronged inquiry: (1) whether the parties are bound by a valid arbitration agreement; and (2) if so, whether the particular type of controversy between the parties falls within the scope of that agreement. Whether plaintiff is barred from "commenc[ing] a claim" under ORS 701.065(1), on the other hand, is a question that bears on the final disposition of the

parties' dispute and, as such, presents an issue of procedural arbitrability. Accordingly, we hold that the issue is "presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam*, 537 US at 84 (emphasis in original).[6]

Likewise, defendant's assertion that plaintiff failed to meet the contractual conditions precedent to arbitration—submitting the dispute to the engineer, providing written notice to defendant of its request for arbitration, and attempting to resolve the dispute by agreement—presents a " 'procedural' question[ ] which grow[s] out of the dispute" and therefore must be decided by the arbitrator. *John Wiley*, 376 US at 557 (holding that arbitrator should decide whether first two steps of grievance procedure were completed, where those steps were prerequisites to arbitration).

For the reasons set forth above, we agree with the Court of Appeals that the trial court erred in denying plaintiff's petition to compel arbitration and in considering the merits of defendant's summary judgment motion.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[6] Our holding on this issue is limited to the conclusion that the licensing issue must go to the arbitrator rather than the court. In so holding, we express no opinion on the merits of defendant's argument.