**WINTER PARK REAL ESTATE AND IN-VESTMENTS, INC., d/b/a Century 21 Winter Park Real Estate, and Michael Ray, Plaintiffs–Appellants,**

v.

**Marilyn ANDERSON, Defendant–Appellee.**

No. 05CA2773.

Colorado Court of Appeals,
Div. IV.

April 5, 2007.

Parsons, Heizer, Paul LLP, Dean C. Heizer, Miranda K. Hawkins, Cynthia A. Coleman, Denver, Colorado, for Plaintiffs–Appellants.

Laff Campbell Tucker Delaney & Gordon, LLP, Ronald C. Tucker, Greenwood Village, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

In this action concerning claims asserted by a real estate company and its president against a former associate, plaintiffs, Century 21 Winter Park Real Estate (the company) and Michael Ray, appeal from the judgment dismissing their complaint against defendant, Marilyn Anderson, for lack of subject matter jurisdiction. We vacate the judgment and remand with instructions to reinstate the complaint, to compel arbitration of the company's claims pursuant to the terms of the contract, and for further proceedings on Ray's defamation claim against Anderson.

Anderson entered into an independent contractor agreement with the company as a sales associate. The contract governed near-

ly every aspect of Anderson's working relationship with the company and included an arbitration provision.

According to plaintiffs, while Anderson was working with the company, she encouraged a company client to allow the listing agreement to expire so that she could acquire the client's property for her own account without having to pay the commission. Based on this allegation, plaintiffs filed, and later withdrew, a formal ethics complaint with the Colorado Association of Realtors, and they made several demands for arbitration based on the arbitration provision of the independent contractor agreement.

Anderson ignored the arbitration requests, and, eventually, plaintiffs filed a complaint in the district court alleging breach of contract, breach of duty of good faith and fair dealing, breach of duty of loyalty, and tort claims of interference with contractual relations and defamation. Plaintiffs requested arbitration for the contract-based claims under their independent contractor agreement with Anderson, and they requested a trial for the tort-based claims.

Anderson filed a motion to dismiss the complaint for lack of subject matter jurisdiction. Anderson argued that arbitration should be compelled pursuant to an arbitration provision in the National Association of Realtors Code of Ethics (Realtors' Code). Anderson disagreed that arbitration was appropriate pursuant to the parties' contract, as plaintiffs had requested in their complaint.

Plaintiffs responded that arbitration, if any, was required pursuant to the parties' contract, not the Realtors' Code, and, moreover, that only the three contractual claims were subject to arbitration. Ray argued separately that he, as a nonsignatory, was not bound by any arbitration agreement. Both plaintiffs argued, however, that all the claims were inextricably intertwined and, therefore, the court was required to retain jurisdiction pursuant to the intertwining doctrine.

The trial court determined that the company, Ray, and Anderson were "subject to an agreement to arbitrate their dispute by virtue of their membership in a trade association known as the National Association of Realtors," or that they were "under an agreement to arbitrate their dispute by virtue of a contractual agreement in a contract between the Plaintiffs and Defendant." The court then, without further explanation, ordered the parties to arbitrate their claims pursuant to the Realtors' Code rather than the parties' contract, and dismissed the complaint for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1).

## I. Jurisdiction

■ Although not raised by the parties, we note as a threshold matter that we have jurisdiction to hear this appeal because the trial court denied plaintiffs' request for arbitration of their contract-based claims pursuant to the terms of the parties' contract. *See* § 13–22–228(1)(a), C.R.S.2006 ("An appeal may be taken from ... [a]n order denying a motion to compel arbitration...."); *Fullerton v. County Court*, 124 P.3d 866 (Colo.App. 2005) (appellate court may sua sponte examine question of subject matter jurisdiction). Thus, although the court ordered the parties to arbitrate "under the auspices of the National Association of Realtors," at the same time, it effectively denied plaintiffs' request to arbitrate pursuant to the terms of the contract. This is sufficient to confer jurisdiction on this court. Cf. *Frontier Materials, Inc. v. City of Boulder*, 663 P.2d 1065, 1066 (Colo.App.1983) (order only compelling arbitration is not final for purposes of appeal).

## II. Merits

Plaintiffs contend that the trial court erred in dismissing their complaint for lack of subject matter jurisdiction. Plaintiffs argue that the three contractual claims are arbitrable pursuant to the parties' contract and not pursuant to the Realtors' Code. Furthermore, they argue, the two allegedly nonarbitrable tort claims are inextricably intertwined with the three arbitrable contract-based claims and, therefore, the court should have retained jurisdiction over all the claims pursuant to the intertwining doctrine illustrated in *Eagle Ridge Condominium Ass'n v. Metropolitan Builders, Inc.*, 98 P.3d 915, 919 (Colo.App.2004). We agree that the court should retain jurisdiction of Ray's individual

defamation claim, but we conclude the other claims are arbitrable under the parties' contract.

■ The purpose of the intertwining doctrine is to prevent inconsistent determinations by an arbitrator and a court. It applies when a single suit contains both arbitrable and nonarbitrable claims that require a review of the same facts. If the factual determinations and legal conclusions are inextricably intertwined, then the court must retain jurisdiction over all claims and refuse to compel arbitration of the otherwise arbitrable claims, despite the parties' agreement to the contrary. Conversely, if the claims are not inextricably intertwined, the court must compel arbitration of the arbitrable claims and retain jurisdiction over the nonarbitrable claims. However, if all claims fall within the scope of an applicable arbitration provision, then the intertwining doctrine does not come into play. *See City & County of Denver v. Dist. Court,* 939 P.2d 1353, 1369 (Colo.1997).

Accordingly, we first determine whether arbitration should be under the provisions of the Realtors' Code or the arbitration clause of the contract. Next, we determine which claims are within the scope of arbitration. Finally, if only some of the claims are arbitrable, we determine whether the arbitrable and nonarbitrable claims are so inextricably intertwined as to prevent severance.

### A. Which Arbitration Provisions Apply?

■ Arbitration is a matter of contract and is governed by contract principles. Thus, when determining the scope of an arbitration clause, a court must faithfully carry out the reasonable expectations of the parties. To do so, the court looks to the language of the clause to determine whether it encompasses the factual nature of the claim at issue. When the parties' intentions are not clear, a court must apply a presumption in favor of arbitration, and prohibit litigation unless the court can say with positive assurance that the arbitration provision is not susceptible of any interpretation that encompasses the subject matter of the dispute. *See City & County of Denver v. Dist. Court, supra,* 939 P.2d at 1363–64.

■ The arbitrability of a claim, which necessarily involves the interpretation of a contract, is a question of law we review de novo. *See Cherokee Metro. Dist. v. Simpson,* 148 P.3d 142, 146 (Colo.2006); *Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc., supra,* 98 P.3d at 918 (arbitrability of a claim generally). When interpreting a contract, we seek to effectuate the intent and reasonable expectations of the parties. *See Hoang v. Assurance Co.,* 149 P.3d 798, 801 (Colo.2007).

### 1. Arbitration Clause in Independent Contractor Agreement

■ The arbitration clause in the contract between the company and Anderson provided, in relevant part:

> 7. Enforcement. Upon the written request of BROKER [company] or ASSOCIATE [Anderson], whether made before or after the institution of *any* legal proceedings, any action, dispute, *claim* or controversy *of any kind in any way* arising out of or *pertaining to this Contract* (hereinafter, a "dispute") shall be resolved by binding arbitration before a single arbitrator conducted in accordance with Uniform Arbitration Act of 1975, C.R.S. § 13–22–201 et seq....

(Emphasis added.)

Based on this language, it is clear that the parties intended the arbitration clause contained in the contract between the company and Anderson to apply here.

Furthermore, by using the unlimited word "any" three times, as well as the unrestrictive phrase "pertaining to," the parties plainly intended the arbitration provision to have a broad scope. *See Black's Law Dictionary* 1165 (7th ed.1999) (defining "pertain" as "to relate to; to concern"); *see also City & County of Denver v. Dist. Court, supra,* 939 P.2d at 1366 (determining that word "regarding," which is defined as "with respect to; concerning," evidenced an intent by the parties to construe arbitration clause broadly).

### 2. Arbitration Provision in Realtors' Code

■ Plaintiffs agree that they are members of the National Association of Realtors

and, therefore, contractually bound by its rules. However, plaintiffs assert, and we agree, that their claims do not fall within the scope of the mandatory arbitration provision of the Realtors' Code.

The mandatory arbitration provision of the Realtors' Code states:

> In the event of *contractual disputes or specific noncontractual disputes as defined in Standard of Practice 17–4 between Realtors (principals) associated with different firms,* arising out of their relationship as Realtors, the Realtors shall submit the dispute to arbitration in accordance with the regulations of their Board or Boards rather than litigate the matter.

National Ass'n of Realtors, Code of Ethics & Standards of Practice art. 17 (emphasis added). We conclude that this provision does not apply to disputes, either contractual or noncontractual, that arise between or among realtors, such as here, who have been associated with the same firm.

Initially, we note, Standard of Practice 17–4, referred to in the Realtors' Code, lists five noncontractual disputes that are subject to mandatory arbitration: (1) where a listing broker has compensated a cooperating broker and another cooperating broker subsequently claims to be the procuring cause of the sale or lease; (2) where a buyer is compensated by a seller and not by the listing broker, and the listing broker then reduces the commission owed by the seller, yet another cooperating broker claims to be the procuring cause of the sale; (3) where a buyer or tenant representative is compensated by the buyer or tenant and, as a result, the listing broker reduces the commission owed by the seller or landlord, while another cooperating broker claims to be the procuring cause of the sale; (4) where two or more listing brokers claim entitlement to compensation pursuant to open listings with a seller who agrees to participate in arbitration; and (5) where a buyer is compensated by the seller rather than the listing broker, and the listing broker then reduces the commission owed by seller and then claims to be the procuring cause of the sale. None of these situations applies to the defamation and in-

terference with contractual relations claims asserted here.

Furthermore, because the parties were associated with the same firm, by the Realtors' Code's plain terms, plaintiffs' noncontractual claims are not subject it its provisions.

The plain language of the Realtors' Code, however, is less clear as to the requirement of mandatory arbitration as to plaintiffs' contractual claims. The qualifying phrase "between Realtors ... associated with different firms" could be read to apply to the phrase "contractual claims" or to apply only to "specific noncontractual disputes," the last antecedent. *See People v. McPherson,* 200 Colo. 429, 432, 619 P.2d 38, 40 (1980) (when courts interpret statutes, "relative and qualifying words and phrases, where no contrary intention appears, are construed to refer solely to the last antecedent with which they are closely connected"), *superseded by* § 2–4–214, C.R.S.2006 (expressly abrogating the "rule of the last antecedent" set forth in *McPherson).*

However, reading the mandatory arbitration provision of article 17 in the context of the Realtors' Code in its entirety, we conclude that it is intended to apply to inter-firm real estate transactions, and not to intra-firm employment contract disputes as we have here. *See also Lane v. Urgitus,* 145 P.3d 672, 676 (Colo.2006) (assuming without analysis that phrase "between realtors (principals) associated with different firms" applies to "contractual disputes"); cf. *Am. Respiratory Care Servs. v. Mgr. of Revenue,* 835 P.2d 623, 625–26 (Colo.App.1992) (interpreting phrase "oxygen and hemodialysis products" to mean "oxygen products and hemodialysis products" based on context of provision). Although the Code's purpose is to promote the ethical behavior of realtors by providing standards of conduct, we find nothing in the Code that indicates that it was intended to interfere with specific, privately contracted employment-type relationships between members of the same firm.

Indeed, the National Association of Realtors Arbitration Manual, which accompanies the Code, contains a section entitled "Duty and Privilege to Arbitrate," and explicitly states that arbitration between or among

members of the same firm is voluntary, and may proceed only by written agreement of all parties. Nat'l Ass'n of Realtors Arbitration Manual § 44(4) ("Realtors and Realtor–Associates who are or were affiliated with the same firm shall have the same right to invoke the arbitration facilities of the Board, provided each party voluntarily agrees to the arbitration in writing and the Board finds the matter properly subject to arbitration.").

Here, there was no written agreement between Anderson and plaintiffs indicating that they wished the Realtors' Code arbitration provision to apply to contractual disputes that arise from their intra-firm relationship. Moreover, although Anderson and plaintiffs are no longer associated with the same firm, the entire substance of their contractual claims arises directly from their previous intra-firm relationship. Further still, the factual underpinnings of their contractual claims occurred while the parties were engaged in their employment-type relationship. Thus, the mandatory arbitration provision of the Realtors' Code does not apply to plaintiffs' contractual claims here.

### B. Which Claims are Subject to Arbitration Pursuant to the Parties' Contract?

As discussed, we must look to the factual allegations of the respective claims to determine whether they fall within the broad scope of the parties' contractual provision here requiring arbitration of any claim "arising out of or pertaining to this [c]ontract." *See City & County of Denver v. Dist. Court, supra,* 939 P.2d at 1363–64.

Although all parties agree that the three contractual claims arise from the contract and, therefore, are subject to arbitration, plaintiffs argue that the tort claims do not fall within the scope of the arbitration provision. We conclude that the tort claims of the company, and Ray as its president, are within the scope of the arbitration agreement. We further conclude that, in his personal capacity, Ray is not covered by the arbitration agreement, he has standing only to raise his defamation claim, and his defamation claim is not subject to arbitration.

### 1. Company's Interference with Contractual Relations Claim

 To support its interference with contractual relations claim, the company alleged that while Anderson was working there, she actively encouraged a company client to allow the listing agreement to expire so that Anderson could acquire the client's property for her own account without having to pay the commission. The company asserted these same factual allegations to support its contractual claims, which both the company and Anderson agree arise directly from the contract. Thus, although the company's interference with contract claim sounds in tort, we conclude that the parties intended it to fall within the scope of the arbitration provision. *See City & County of Denver v. Dist. Court, supra,* 939 P.2d at 1364 (factual allegations, not the legal cause of action pled, should guide determination of the intended scope of the arbitration provision).

### 2. Company's Defamation Claim

 To support its defamation claim, the company alleged that Anderson falsely stated that it had engaged in "unlawful" and "unethical" business practices. This allegation directly pertains to the independent contractor agreement because the contract expressly provided that Anderson was to "promote the business" of the company. Moreover, because the allegation speaks to the business relationship between the company and Anderson, which was the subject of the contract, we conclude that the parties intended for such a claim to fall within the scope of the arbitration provision. *See City & County of Denver v. Dist. Court, supra,* 939 P.2d at 1364 (claim falls within scope of arbitration provision if the factual allegations encompass the subject matter of the dispute).

### 3. Ray's Claims

 Ray contends, however, that in his personal capacity, he is not subject to the arbitration clause because he is neither a party to the independent contractor agreement nor a third-party beneficiary. We agree.

Arbitration is a matter of contract and therefore subject to the rules of contract law. *See City & County of Denver v. Dist. Court, supra,* 939 P.2d at 1363. A person not a party to a contract cannot be compelled to perform its terms or seek relief for violation of its terms unless the parties entered into the contract with the intention of directly benefiting the nonparty. Additionally, the intent to create a third-party beneficiary must be apparent from the terms of the contract or the surrounding circumstances. *See Jefferson County Sch. Dist. No. R–1 v. Shorey,* 826 P.2d 830, 843 (Colo.1992).

Here, Ray, individually, is not a party to the contract. The agreement expressly states that only the company and Anderson are parties. Although Ray signed the contract, he did so only above the line with the company's name and included the word "President" after his name, indicating that he was signing the contract only in his capacity as president of the company and not in his personal capacity. *See Colo. Fin. Co. v. B.F. Bennet Oil Co.,* 110 Colo. 1, 5, 129 P.2d 299, 301 (1942) (signing document in official capacity evidences intent that it apply to individual only in official capacity).

Neither is Ray, in his personal capacity, a third-party beneficiary of the contract. Any benefit he may have received from the contract was merely incidental to his position as president. The contract refers only to the rights and obligations of the company, demonstrating that Anderson and the company entered into the contract for their own mutual benefit, not to individually benefit Ray. Further, except in a company policy attachment, Ray's name does not appear anywhere in the body of the contract. *See Everett v. Dickinson & Co.,* 929 P.2d 10, 14 (Colo.App. 1996) (regarding as purposeful the omission of defendant's name in the contract and therefore concluding parties did not intend defendant to be third-party beneficiary); *see also McPheeters v. McGinn, Smith & Co.,* 953 F.2d 771, 772–73 (2d Cir.1992) (references to a third party in a contract are insufficient to demonstrate an intent by parties to make third party subject to contract).

Thus, because the parties did not intend to make Ray, as an individual, subject to the contract, and because Ray did not accept its terms, his claims against Anderson are not subject to the contract's arbitration provision. *See Eychner v. Van Vleet,* 870 P.2d 486, 490 (Colo.App.1993) (person cannot be required to submit to arbitration any dispute that he or she did not agree to so submit).

### C. Are Company's Arbitrable Claims Intertwined with Ray's Claims?

As discussed, the intertwining doctrine applies when arbitrable and nonarbitrable claims are inextricably intertwined. *See City & County of Denver v. Dist. Ct., supra,* 939 P.2d at 1369.

Thus, we must determine here whether the company's arbitrable claims are inextricably intertwined with Ray's claims.

#### 1. Ray's Standing

As a preliminary matter, we address the issue of Ray's standing to bring claims against Anderson, because resolution of this issue will determine the scope of our inquiry into the intertwining doctrine. *See Ainscough v. Owens,* 90 P.3d 851, 855–56 (Colo. 2004) (standing is a threshold issue that must be resolved before addressing merits and is reviewed de novo); *CF&I Steel Corp. v. Colo. Air Pollution Control Comm'n,* 199 Colo. 270, 274, 610 P.2d 85, 88 (1980) (approving sua sponte consideration of standing issue).

Standing requires, inter alia, that a plaintiff suffered an injury in fact. *See State Bd. for Cmty. Colls. & Occupational Educ. v. Olson,* 687 P.2d 429, 434 (Colo.1984).

For each claim in their complaint, plaintiffs alleged injury to the company, for example, "Company [has] been and will continue to be damaged by Anderson's defamatory statements"; "[Company] has been and will continue to be damaged by Anderson's wrongful interference with the listing agreement"; "As a consequence of Anderson's breach of her broker/ associate agreement with [company], [company] has suffered damages"; "[Company] has been damaged by Anderson's breach of the duty of good faith and fair dealing"; and "[Company] has been damaged by Anderson's breach of the duty of good faith and fair dealing." However, the

only injury alleged in the complaint concerning Ray individually is that "Ray [has] been and will continue to be damaged by Anderson's defamatory statements."

Moreover, because the company asserted its own claims to remedy its injuries, Ray cannot acquire standing through the company's injuries. *See State Bd. for Cmty. Colls. & Occupational Educ. v. Olson, supra,* 687 P.2d at 435 (plaintiff can assert rights of third parties not before the court when it is difficult or improbable for third party to assert own rights, when there is a need to avoid dilution of third party's rights in the event standing is not permitted, or when there is a substantial relationship between plaintiff and third party justifying plaintiff's suit on behalf of third party).

Therefore, Ray has not demonstrated standing with respect to the contractual claims, the interference with contractual relations claim, and the company's defamation claim. However, Ray's allegation that he was injured by Anderson's alleged defamatory statements is sufficient to establish his standing to assert a defamation claim against Anderson for the injury to his personal reputation. *See Denver Publ'g Co. v. Bueno,* 54 P.3d 893, 902 (Colo.2002) (individuals may seek relief under the tort of defamation for violation of their interest in maintaining their good reputation).

### 2. Are Company's Arbitrable Claims Intertwined with Ray's Nonarbitrable Defamation Claim?

■ Claims are inextricably intertwined when they require the review of the same facts to make common determinations of fact or law. *See City & County of Denver v. Dist. Court, supra,* 939 P.2d at 1369.

Here, to support his defamation claim, Ray alleged that Anderson sullied his reputation by telling others that he is a "thief" and "unethical." Ray included no other facts to indicate that a court hearing his claim would have to review the same facts or make any of the same determinations of fact or law that an arbitrator would have to make in deciding the company's claims. Accordingly, these claims are not inextricably intertwined, and the trial court should have retained jurisdiction over Ray's defamation claim. *See Breaker v. Corrosion Control Corp.,* 23 P.3d 1278, 1286 (Colo.App.2001).

### III. Summary and Conclusion

Because we have concluded that Ray's defamation claim is not inextricably intertwined with the company's claims, we need not address whether the intertwining doctrine can be applied when a nonparty to a contract, such as Ray, asserts a nonarbitrable claim that is inextricably intertwined with arbitrable claims asserted by parties to the contract. *See Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc., supra* (cert. granted and subsequently denied (Colo. No. 04SC273, Oct. 18, 2004) on question "[w]hether the intertwining doctrine precludes arbitration of a signatory's arbitrable claims if the claims are intertwined with a nonsignatory's nonarbitrable claims").

We also need not address whether the intertwining doctrine is preempted by the Federal Arbitration Act (FAA) to the extent that it requires courts to refuse arbitration of otherwise arbitrable claims involving interstate commerce. *See Volt Info. Scis., Inc. v. Bd. of Trs.,* 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (parties may choose by contract which arbitration rules will apply to their dispute because the FAA does not "occupy the entire field of arbitration"; however, state laws that conflict with the FAA's purpose of overruling the judiciary's refusal to enforce arbitration agreements are preempted if the arbitrable claims involve interstate commerce).

In summary, we conclude that none of plaintiffs' claims is subject to the arbitration provision of the Realtors' Code. We also conclude that Ray has standing only to assert his defamation claim and that, although all the company's claims fall within the scope of the arbitration provision in the independent contractor agreement, Ray's defamation claim does not. We further conclude that the company's arbitrable claims are not inextricably intertwined with Ray's nonarbitrable claim.

Therefore, the judgment dismissing the complaint and ordering the company, Ray,

and Anderson to arbitrate according to the arbitration provision in the Realtors' Code is vacated. The case is remanded with instructions to the trial court to reinstate the complaint, to order arbitration of the company's claims pursuant to the terms of the parties' contract, and for further proceedings on Ray's defamation claim against Anderson consistent with this opinion.

Judge METZGER * and Judge NEY *, concur.