**VULCAN POWER COMPANY,**
a Colorado corporation,
Plaintiff,

v.

Stephen M. MUNSON, Defendant,

and

Steve Munson; Bill Fraser; Soo Min Fay; Doug Frosch; George Marshall; Cal Mitchell; Jim Rubino; Tim Shea; John Sullivan; and Sandy Lonsdale, Counterclaimants–Appellees,

v.

Vulcan Power Company, a Colorado corporation; Scott Mackin; and Todd Bright, Counterclaim Defendants–Appellants.

No. 10CA0348.

Colorado Court of Appeals,
Div. I.

Feb. 3, 2011.

No Appearance for Counterclaimants–Appellees.

Greenberg Traurig LLP, David G. Palmer, Tyler D. Coombe, Denver, CO, for Counter-claim Defendant–Appellant Vulcan Power Company.

Bieging Shapiro & Burrus LLP, I. Thomas Bieging, Denver, CO; Dickstein Shapiro LLP, Barry Wm. Levine, Howard N. Feldman, Washington, D.C., for Counterclaim Defendants–Appellants Scott Mackin and Todd Bright.

Opinion by Judge GABRIEL.

Counterclaim defendants, Vulcan Power Company, Scott Mackin, and Todd Bright (collectively, defendants), appeal the district court's order refusing (1) to give preclusive effect to an Oregon court's order granting a motion to compel arbitration and (2) to compel arbitration based on the employment contract of counterclaimant Stephen M. Munson, Vulcan's former president and chief executive officer (CEO). We dismiss defendants' issue preclusion argument for lack of appellate jurisdiction but affirm the portion of the district court's order refusing to compel arbitration based on Munson's employment contract.

## I. Background

After institutional investors obtained control of Vulcan's board of directors, the board terminated Munson for cause as president and CEO. In response, Munson and certain Vulcan shareholders, acting in their individual capacities, sued Vulcan and the institutional investor directors in Oregon circuit court. That court ultimately entered an order dismissing various claims for failure to state a claim. In the same order, however, the court granted a motion to compel arbitration of the very claims that it had dismissed. We are unclear as to why the court so ruled, rather than finding the motion to compel moot. Nonetheless, the court appears to have based its ruling on the arbitration clause in Munson's employment contract, which provided, "[I]f Executive [Munson] contests any termination hereunder, such contest shall be resolved by binding arbitration...."

While the Oregon action was pending, Vulcan filed the current Colorado action under section 7–108–109, C.R.S.2010. In this action, Vulcan sought to remove Munson as a

member of the board of directors, a position he retained despite his termination as president and CEO of the company. Munson and certain other common stock shareholders then asserted a counterclaim under the same statutory provision, seeking to remove the institutional investor directors, including Mackin and Bright. As pertinent here, that counterclaim asserted various reasons why the directors should be removed, including that they wrongfully terminated Munson as president and CEO.

Thereafter, defendants moved to dismiss or stay the counterclaim on issue preclusion grounds, contending that the Oregon court's order granting the motion to compel arbitration was entitled to preclusive effect. Alternatively, they argued that, pursuant to Munson's employment contract, the Colorado court should compel arbitration of those allegations of the counterclaim relating to Munson's termination and then either dismiss or stay the counterclaim as appropriate.

The district court rejected these arguments. As pertinent here, the court held that it was not "persuaded that the elements of issue preclusion (including identity of issues and parties and the opportunity for 'full and fair' litigation of the issues) have been established." The court also rejected defendants' assertion that Munson's employment contract required arbitration of the counterclaim, opining, among other things, that "issues pertinent to the agreement [were] sufficiently distinct from the issue of removal of corporate directors as to render arbitration on the counterclaim improper."

Defendants now bring this interlocutory appeal pursuant to section 13–22–228(1)(a), C.R.S.2010, of the Uniform Arbitration Act (UAA).

## II. Jurisdiction

█ As an initial matter, we must satisfy ourselves that we have jurisdiction over this appeal. *See J.P. Meyer Trucking & Constr., Inc. v. Colo. Sch. Dists. Self Ins. Pool,* 18 P.3d 198, 201 & n. 3 (Colo.2001). Defendants assert that we have interlocutory appellate jurisdiction under section 13–22–228(1)(a) to address whether the district court erred in rejecting both (1) their issue preclusion argu-

ment and (2) their argument that Munson's employment contract required arbitration of the counterclaim's allegations relating to his termination. Although we clearly have jurisdiction to address defendants' second assertion, *see* § 13–22–228(1)(a), we sought and have obtained supplemental briefing from defendants on whether we have jurisdiction over their issue preclusion argument. We conclude that we do not.

Section 13–22–228(1)(a) provides, "An appeal may be taken from ... [a]n order denying a motion to compel arbitration." In analyzing a prior version of this provision, our supreme court opined that appellate jurisdiction under the statute was limited to the denial of a motion to compel arbitration "based upon a written agreement to arbitrate or an arbitration provision in a contract." *J.P. Meyer,* 18 P.3d at 202. This followed, the court said, from a plain language reading of the relevant statutory provisions in the UAA. *Id.* Accordingly, the court held that the appellate courts lacked jurisdiction over an interlocutory appeal from the denial of a motion seeking arbitration based on the former No–Fault Act, rather than on an agreement to arbitrate. *Id.*

Although the General Assembly has since adopted an amended version of the UAA, the *J.P. Meyer* court's reasoning applies equally to the current version of the UAA. Specifically, the applicable provisions of the UAA state that a court shall compel arbitration "[o]n the motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement." § 13–22–207(1), C.R.S.2010. Section 13–22–228(1)(a), in turn, allows a party to appeal from "[a]n order denying a motion to compel arbitration." Reading these provisions together, *see J.P. Meyer,* 18 P.3d at 201, we conclude that an interlocutory appeal under section 13–22–228(1)(a) may only be taken from the denial of a motion that seeks to compel arbitration based on "an agreement to arbitrate." *See* § 13–22–207(1).

Applying these principles here, we hold that we lack jurisdiction to hear that portion of defendants' appeal concerning the district court's rejection of their issue preclusion ar-

gument. Like the argument advanced by the plaintiffs in *J.P. Meyer*, who sought arbitration based on a statutory provision, defendants' issue preclusion argument effectively sought arbitration on noncontractual grounds. For the reasons set forth in *J.P. Meyer*, an appeal from an order rejecting such an argument does not fall within the ambit of section 13–22–228(1)(a).

We are not persuaded otherwise by *Winter Park Real Estate & Investments, Inc. v. Anderson*, 160 P.3d 399 (Colo.App.2007), on which defendants rely. In *Winter Park*, 160 P.3d at 402, the district court ordered arbitration pursuant to the National Association of Realtors Code of Ethics and effectively denied the plaintiffs' request to arbitrate pursuant to a contract between the parties. Citing section 13–22–228(1)(a), a division of this court held that it had jurisdiction over the appeal "because the trial court denied plaintiffs' request for arbitration ... pursuant to the terms of the parties' contract." *Id.* Accordingly, *Winter Park* does not support defendants' assertion that we have interlocutory appellate jurisdiction over their issue preclusion argument. To the contrary, *Winter Park* is entirely consistent with the reasoning in *J.P. Meyer* and with our analysis here.

Nor are we persuaded by defendants' assertions that their issue preclusion argument was merely part and parcel of their motion to compel arbitration. Defendants made two separate arguments, namely, that the case should have been dismissed on issue preclusion grounds, and alternatively, that the district court should have compelled arbitration. Moreover, whatever defendants may have asserted as a basis for arbitration in the Oregon action does not alter the fact that their issue preclusion argument in this case did not seek to compel arbitration pursuant to Munson's contract.

### III. Munson's Employment Contract

■ We turn then to the merits of defendants' alternative argument that the district court erred in refusing to compel arbitration based on Munson's employment contract. We review this issue de novo, employing the same legal standards that the district court employed, *see Lujan v. Life Care Ctrs.*, 222 P.3d 970, 972 (Colo. App.2009), and we affirm.

■ Pursuant to the choice of law provision in Munson's employment contract, we apply Oregon law here. *See DEX Media, Inc. v. Nat'l Mgmt. Servs., Inc.*, 210 Or.App. 376, 150 P.3d 1093, 1097 (2007) (honoring the parties' choice of law provision when interpreting the scope of an arbitration clause to the extent that application of the chosen state law did not undermine the policies of the Federal Arbitration Act). Under Oregon law, courts must consider "whether the parties intended their arbitration agreement to include the present controversy by examining the text and context of the provision." *Livingston v. Metro. Pediatrics, LLC*, 234 Or.App. 137, 227 P.3d 796, 803 (2010). If the provision is unambiguous, courts must give effect to the parties' intentions. *Id.* Any doubts, however, as to whether the controversy falls within the arbitration provision should be resolved in favor of arbitration. *Id.* Thus, our inquiry is whether the arbitration provision is susceptible of an interpretation covering the parties' dispute. *Id.* In making this determination, we consider not only the arbitration clause itself, but also the entire contract, the relationship of the parties, the subject matter of the contract, and, where pertinent, the practical construction, if any, that the parties themselves placed on the contract by their acts. *Id.* at 803–04.

Here, Munson's employment agreement provided that if he "contests any termination hereunder, such contest shall be resolved by binding arbitration." Before the district court, defendants specifically disavowed that they were trying to use this provision to compel arbitration of the counterclaim itself. Rather, they argued that because the allegations in Munson's counterclaim "touched matters" relating to his termination, those *allegations* could only be resolved in arbitration. The district court rejected defendants' arguments, and we agree with the district court.

As noted above, Munson's contract required arbitration when he contested any termination under that contract. In our

view, this provision only encompassed *claims* in which Munson was challenging his termination. It did not encompass factual allegations touching on Munson's termination that were asserted in support of a claim not challenging Munson's termination (e.g., the statutory counterclaim to remove directors at issue here). Our interpretation finds support in the fact that Munson's contract provided a limited remedy for a wrongful termination, namely, a severance payment to be determined by arbitration. It would have made no sense for the parties to have agreed to such a limited remedy had they intended the arbitration provision to cover the situation here, where allegations relating to Munson's termination are asserted in a counterclaim that does not seek a remedy for that termination.

The Texas Court of Appeals' decision in *IKON Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 694–96 (Tex.App.1999), is instructive. In *IKON*, the plaintiff alleged that IKON had fraudulently induced him to sell his company to it. *Id.* at 690–91. IKON moved to compel arbitration based on a clause in the parties' sale agreement that provided, in pertinent part:

> In the event [the plaintiff's] employment is terminated, and [the plaintiff] contends that such termination was wrongful or otherwise in violation of his rights or privileges, express or implied, whether founded in fact or in law, or any other rights or privileges, or was in violation of any express or implied condition, term, or covenant, whether founded in law or in fact ..., or otherwise in violation of law, [the plaintiff] and [IKON] agree to submit the above-described disputed matter to binding arbitration....

*Id.* at 691–92. This clause further provided that in any such arbitration, the maximum remedy that the arbitrators could award was limited to any unfulfilled base salary remaining in the employment period. *Id.* at 692.

The court rejected IKON's assertion that the plaintiff's fraudulent inducement claim fell within the arbitration provision. *Id.* at 694–96. As pertinent here, the court held that the arbitration clause at issue was, on its face, limited in scope, requiring the parties to arbitrate only disputes arising out of the termination of the plaintiff's employment in which he claimed that the termination was wrongful, in violation of his rights and privileges, or in violation of the contract itself. *Id.* at 694. The court found support for this conclusion in the limited remedy provided in the parties' agreement. *Id.* Specifically, the court opined that it did not believe the parties would have contemplated such a limited remedy if, as IKON argued, the arbitration clause was to be triggered merely by a claim that the plaintiff's rights and privileges were violated, regardless of whether those rights and privileges related to his termination. *Id.* Such a broad interpretation, the court observed, would have been "clearly contrary to the plain meaning of the provision." *Id.* Finally, the court noted that the plaintiff was not seeking any damages related to his employment, such as unpaid salary, but rather sought damages for the amount by which he allegedly was undercompensated in the sale transaction. *Id.* at 695. In these circumstances, the court concluded, "[T]his case is not based on a dispute over the termination of [the plaintiff's] employment." *Id.*

The analysis set forth in *IKON*, with which we agree, compels the same result here. As in *IKON*, the arbitration clause was limited in scope, requiring the parties to arbitrate only disputes in which Munson contested his termination under his contract. Moreover, as in *IKON*, the contract limited the remedy available to Munson for any such wrongful termination, and we do not believe the parties would have agreed to such a limited remedy if the arbitration clause was to be triggered merely by a claim to which Munson's termination might arguably be relevant. Indeed, such a broad interpretation would contradict the clause's plain meaning. Finally, we note that, like the plaintiff in *IKON*, Munson is not seeking damages for any wrongful termination. Rather, he, along with certain other Vulcan shareholders, is seeking to remove directors pursuant to a statute, and his termination constitutes but one factual allegation among many supporting this claim. For these reasons, we conclude that the district court correctly rejected defendants' contention that Munson's employment contract required ar-

bitration of the counterclaim's allegations relating to his termination.

Notwithstanding the foregoing, defendants argue that the allegations at issue are arbitrable because they "touch matters" relating to Munson's termination. For two reasons, we reject this assertion. First, for the reasons set forth above, such a construction would contradict the plain and unambiguous language of the arbitration clause at issue. Second, *Industra/Matrix Joint Venture v. Pope & Talbot, Inc.*, 341 Or. 321, 142 P.3d 1044, 1053 (2006), on which defendants rely, does not sweep as broadly as they assert. In that case, the plaintiff asserted claims for breach of contract and quantum meruit. *Id.* The quantum meruit claim essentially mirrored the contract claim, but for the addition of required allegations regarding unjust enrichment. *Id.* It is in this context that the court opined that the quantum meruit claim "touched matters" that were clearly arbitrable, namely, the performance of the parties and the payment for the plaintiff's work, and thus was itself arbitrable. *Id.*

Here, unlike in *Industra/Matrix*, the counterclaim at issue, which was asserted not only by Munson but also by various Vulcan shareholders, did not mirror a clearly arbitrable claim (i.e., a challenge by Munson to his termination under his employment agreement). Rather, it was a statutory claim seeking a noncontract-based equitable remedy. Accordingly, *Industra/Matrix* is inapposite.

### IV. Conclusion

For these reasons, the portion of defendants' appeal challenging the district court's refusal to give preclusive effect to the Oregon court's order is dismissed, and the portion of the district court's order refusing to compel arbitration is affirmed.

Judge TAUBMAN and Judge PLANK * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and